Paul A. Grammatico (SBN 246380)
pgrammatico@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
333 S. Grand Avenue, Suite 2225
Los Angeles, CA 90071
Telephone:  (213) 493-3980
Facsimile:   (404) 400-7333

Benjamin D. Williams (SBN 307073)
bwilliams@kcozlaw.com
**KABAT CHAPMAN & OZMER LLP**
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363
Telephone:  (404) 400-7300
Facsimile:   (404) 400-7333

*Counsel for Network Capital Funding Corporation*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERMAINE STEWART, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NETWORK CAPITAL FUNDING CORPORATION; and DOES 1 through 10, inclusive, and each of them,<br><br>Defendants. | Case No: 2:21-cv-00368-MWF-MAA<br><br>**DEFENDANT NETWORK CAPITAL FUNDING CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>[*Declaration of Jonathan Zuppiger and Notice of Manual Filing or Lodging filed, and proposed order lodged, concurrently*]<br><br>Date:    June 28, 2021<br>Time:   10:00 a.m.<br>Ctrm:   5A<br>            350 West 1st Street<br>            Los Angeles, CA 90012<br><br>Hon. Michael W. Fitzgerald<br><br>FAC Filed: May 13, 2021<br>Trial Date:  No Trial Date Set |

**TO THE HONORABLE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on June 28, 2021, at 10:00 a.m., in Courtroom 5A of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, Defendant Network Capital Funding Corporation ("NCFC") moves the Court for an Order dismissing Plaintiff Jermaine Stewart's First Amended Complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of standing and failure to state a claim upon which relief can be granted. In his First Amended Complaint, Stewart alleges that NCFC violated the Telephone Consumer Protection Act ("TCPA") by (1) using an automatic telephone dialing system ("ATDS") to place marketing calls to his cellular phone (2) after he requested that his number be added to NCFC's internal do-not-call list. NCFC moves to dismiss the entire First Amended Complaint because (1) despite two opportunities to do so, Stewart has not pleaded any factual allegations in support of his conclusion that the alleged calls were made with an ATDS; and (2) the evidence confirms that Stewart did not request that NCFC add his cellular number to its internal do-not-call list, and thus he lacks standing to maintain any claim for NCFC's purported failure to adhere to the TCPA's internal do-not-call regulations.

This Motion is made following the conference of counsel under Local Rule 7-3, which took place on May 19 and 20, 2021.

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support of the same, Declaration of Jonathan Zuppiger, the Notice of Manual Filing or Lodging, the complete file and record in this action, and such further and other matters as the Court may allow.

///

///

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KABAT CHAPMAN & OZMER LLP

DATED:  May 26, 2021

By:  /s/ Benjamin D. Williams
      Benjamin D. Williams
      *Attorney for Defendant Network Capital*
      *Funding Corporation*

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................... 1

II.     FACTUAL BACKGROUND ..................................................................... 2

        A.      Procedural History and Stewart's Allegations. .................................. 2

        B.      Stewart Never Asked to Be Placed on NCFC's Internal Do-Not-Call List. ........................................................................................... 3

III.    LEGAL STANDARDS ............................................................................. 4

        A.      Rule 12(b)(1) ............................................................................. 4

        B.      Rule 12(b)(6). ............................................................................ 6

IV.     ARGUMENT ........................................................................................ 7

        A.      NCFC's Jurisdictional Evidence Confirms Stewart Lacks Standing to Pursue an Internal Do-Not-Call Claim. ............................. 7

                1.      Standing to Assert an Internal Do-Not-Call Claim. ................... 7

                2.      Stewart Lacks Standing to Pursue an Internal Do-Not-Call Claim Against NCFC. ........................................................... 8

        B.      Stewart's FAC Still Pleads No Facts to Support His ATDS Claim. .... 9

V.      CONCLUSION .................................................................................... 13

# TABLE OF AUTHORITIES

<strong>Page(s)</strong>

**Cases**

*Armstrong v. Investor's Bus. Daily, Inc.*,
2018 WL 6787049 (C.D. Cal. Dec. 21, 2018).......................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..........................................................2, 6, 10, 12

*Bailey v. Domino's Pizza, LLC*,
867 F. Supp. 2d 835 (E.D. La. 2012) ...................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..........................................................2, 6, 10, 12

*Cordoba v. DIRECTV, LLC*,
942 F.3d 1259 (11th Cir. 2019)...................................................*passim*

*Drake v. FirstKey Homes, LLC*,
439 F. Supp. 3d 1313 (N.D. Ga. 2020) ............................................8, 9

*Easter v. Am. W. Fin.*,
381 F.3d 948 (9th Cir. 2004) ...............................................................5

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
751 F.3d 990 (9th Cir. 2014) ...........................................................6, 7

*Hall v. BNSF Ry. Co.*,
2014 WL 4719007 (W.D. Wash. Sept. 22, 2014) ................................5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .............................................................................4

*Maier v. J.C. Penny Corp., Inc.*,
2013 WL 3006415 (S.D. Cal. June 13, 2013) ....................................12

*Makaron v. GE Sec. Mfg., Inc.*,
2014 WL 12614468 (C.D. Cal. July 31, 2014) ..................................13

*Marks v. Crunch San Diego, LLC*,
904 F.3d 1041 (9th Cir. 2018) ...........................................................10

*Mattson v. Quicken Loans Inc.*,
  2019 WL 7630856 (D. Or. Nov. 7, 2019) ...................................................... 9

*McEwen v. Nat'l Rifle Ass'n*,
  2021 WL 1414273 (D. Me. Apr. 14, 2021)............................................... 11, 12

*Montanez v. Future Vision Brain Bank*,
  No. 20-cv-02959 .............................................................................. 10, 11, 12

*Nakai v. Charter Commc'ns, Inc.*,
  2020 WL 1908948 (C.D. Cal. Apr. 15, 2020)............................................... 12

*Perrong v. South Bay Energy Corp.*,
  2021 WL 1387506 (E.D. Pa. Apr. 13, 2021)................................................ 8, 9

*Priester v. eDegreeAdvisor, LLC*,
  2017 WL 4237008 (S.D. Cal. Sept. 25, 2017) .............................................. 13

*Reardon v. Uber Techs., Inc.*,
  115 F. Supp. 3d 1090 (N.D. Cal. 2015)........................................................... 3

*Safe Air for Everyone v. Meyer*,
  373 F.3d 1035 (9th Cir. 2004) ........................................................................ 5

*Savage v. Glendale Union High Sch.*,
  343 F.3d 1036 (9th Cir. 2003) ........................................................................ 5

*Simon v. E. Kentucky Welfare Rts. Org.*,
  426 U.S. 26 (1976) .......................................................................................... 4

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) .......................................................................... 6

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016)..................................................................................... 4

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001 ..................................................................... 6, 10

*Sterling v. Securus Techs., Inc.*,
  2020 WL 2198095 (D. Conn. May 6, 2020) ................................................... 8

*Whitaker v. Tesla Motors Inc.*,
  985 F.3d 1173 (9th Cir. 2021).......................................................................... 6

iii

*White v. Lee,*
    227 F.3d 1214 (9th Cir. 2000) ............................................................................ 5

**Statutes**

47 C.F.R. § 64.1200 ........................................................................................... 7, 8, 9

47 U.S.C. § 227 ................................................................................................ 8, 9, 12

**Rules**

Fed. R. Civ. P. 8 ......................................................................................................... 6

Fed. R. Civ. P. 12 ............................................................................................. *passim*

## I.  INTRODUCTION

The Court should dismiss Plaintiff Jermaine Stewart's amended complaint. Stewart brings two claims under the Telephone Consumer Protection Act ("TCPA"): (1) that Defendant NCFC used an automatic telephone dialing system (ATDS) to call him; and (2) that NCFC made those calls even though Stewart allegedly asked to be placed on NCFC's internal do-not-call list.  Both claims fail: the former under Rule 12(b)(6) for failure to state a claim.

As to the latter, faced with NCFC's first motion to dismiss showing that his original claims were meritless, Stewart partially changed his theory of the case. Whereas he had originally alleged that NCFC called him even though his number was supposedly on the FTC's *national* do-not-call registry, Stewart dropped that claim altogether after NCFC proved it meritless.  Plaintiff now changes his theory entirely and alleges that NCFC called him even though he asked to be added to the company's *internal* do-not-call list, a different regulation entirely.  But this newly manufactured claim fails too, as Stewart has not met the most basic prerequisite for bringing that claim: actually asking to be placed on NCFC's do-not-call list.  NCFC's irrefutable jurisdictional evidence proves this.  Plaintiff therefore lacks standing to pursue this new claim.

With respect to his other claim, Stewart has still pleaded no facts to plausibly support that NCFC used an ATDS to call him, despite having had multiple opportunities to do so.  In its recent *Facebook* decision, the Supreme Court unanimously reversed the Ninth Circuit, clarifying that telephone equipment is an ATDS only if it has the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator.  To state an ATDS claim, then, Stewart must plead *facts*, not mere conclusions, plausibly showing that NCFC's dialing equipment employed or used a random or sequential number generator in placing the

complained-of calls.  He has not done so.  Instead, he parrots the statutory definition of an ATDS wholesale.  Stewart has thus not stated an ATDS claim.  That would have been true even before *Facebook*, but it is especially true now, after the Supreme Court's decision.

Importantly, if more were not required to state an ATDS claim, then any person could sue over almost *any* phone call and make it past the pleading stage by simply pasting the TCPA's statutory ATDS language into the complaint.  That would contravene not only the pleading rigor that *Iqbal* and *Twombly* demand, but it would also flout the very concerns a unanimous Supreme Court expressed in *Facebook*, because it would allow a TCPA suit to "capture virtually all modern cell phones" and "could affect ordinary cell phone owners in the course of commonplace usage"—a result the Supreme Court expressly renounced in *Facebook*.  141 S. Ct. at 1171.

For these reasons, the Court should dismiss Stewart's first amended complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## II.    FACTUAL BACKGROUND

### A.    Procedural History and Stewart's Allegations.

In the first iteration of his lawsuit, Stewart claimed that NCFC called him in violation of the TCPA because, he contended, he had registered his number on the FTC's *national* do-not-call list.  *E.g.*, Compl. ¶¶ 1, 18, 22, 24, ECF No. 1.  NCFC moved to dismiss because, among other things, Stewart had never listed his number on the national registry, which was fatal to his national do-not-call TCPA claim.  *See* Mot. to Dismiss 4, ECF No. 11.  Faced with the motion to dismiss, Stewart changed his story.  He amended his complaint and now alleges that NCFC called him several times after he asked that his -0395 number be placed on NCFC's *internal* do-not-call list, as opposed to the FTC's national registry.  *See* FAC ¶¶ 8–9, 14–15, 22, ECF No. 14.  And even though NCFC pointed out other pleading deficiencies in its initial motion to dismiss, including Stewart's barebones, conclusory ATDS allegations, he

nevertheless still alleges, without elaboration or any factual support, that NCFC used an "automatic telephone dialing system" to make marketing calls to his -0395 number. *Id.* ¶¶ 8–9.  Based on these threadbare allegations, Stewart seeks to certify two purported classes of persons who NCFC allegedly called (1) using "any automatic telephone dialing system or an artificial or prerecorded voice" (even though Plaintiff does not even claim to have received any artificial or pre-recorded voice calls);[1] or (2) thirty (30) days after that person requested that their cellular number be placed on NCFC's internal do-not-call list. *Id.* ¶¶ 21–22.

**B.    Stewart Never Asked to Be Placed on NCFC's Internal Do-Not-Call List.**

After learning about the alleged calls through Stewart's original complaint, NCFC investigated whether and how it had obtained his contact information and whether it had made any calls to him.  NCFC determined that it had bought an opt-in lead with Mr. Stewart's information from a third-party lead-generation company, which NCFC contracted with to provide only leads of those individuals who expressed interest in NCFC's products and consented to be contacted by NCFC. Zuppiger Decl. ¶ 7.  Included with the opt-in information provided to NCFC was Mr. Stewart's home address, the -0395 number, the home value, and the desired loan amount. *Id.*[2]

After purchasing the opt-in lead, NCFC's representatives placed outbound calls to the -0395 number using its telephone system, and those calls were recorded.

_____

[1] The Court should also dismiss or strike Stewart's class allegations and TCPA claims based on calls using an artificial or prerecorded voice (*see*, *e.g.*, FAC ¶¶ 21, 23) because Stewart doesn't allege he received *any* such calls from NCFC.  He therefore certainly cannot represent a class of those individuals.

[2] Consent to be called is a complete defense to TCPA claims, *see generally*, *e.g.*, *Reardon v. Uber Techs., Inc.*, 115 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015), but the Court need not reach that issue in this case because Plaintiff's claims fail at the threshold.

*Id*. ¶¶ 8–9.  On or about November 4, 2020, an NCFC representative spoke very briefly with Stewart.  *Id*. ¶ 9 & Ex. A.  On that call, as evidenced by the recording, Mr. Stewart did not ask NCFC to place the -0395 number on its internal do-not-call list or to stop making marketing calls to the -0395 number.  *Id*. ¶ 10 & Ex. A.  NCFC placed more calls to the -0395 number, but they either were not answered or went to voicemail.  *Id*. ¶ 11.  Stewart placed six inbound calls to NCFC using the -0395 number, one on November 5, 2020, and five in succession on November 18, 2020, all of which were recorded as well, and none of which included any request from Mr. Stewart to stop making marketing calls to his -0395 number.  *Id*. ¶ 12 & Exs. B–G.

This jurisdictional evidence confirms that Stewart never asked that his number be added to NCFC's internal do-not-call list.

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(1)

Article III limits federal judicial power to cases and controversies, and standing to sue "limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).  To satisfy Article III standing, the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id*. (applying the traditional standing test from *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)).  A plaintiff establishes injury in fact, if he suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 1548 (quoting *Lujan*, 504 U.S. at 560).  As to the second element, the Supreme Court has explained "plaintiffs must allege some threatened or actual injury ***resulting from the putatively illegal action*** before a federal court may assume jurisdiction." *Simon v. E. Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41 (1976) (emphasis added).  Thus, Stewart must prove "traceability, *i.e.*, a causal

connection between the injury and the actions complained of." *Easter v. Am. W. Fin.*, 381 F.3d 948, 961 (9th Cir. 2004).

Because standing pertains to a federal court's subject-matter jurisdiction, defendants properly contest a plaintiff's standing on a Rule 12(b)(1) motion to dismiss. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).   A Rule 12(b)(1) jurisdictional attack may be facial or factual.  *Id.* (citation omitted).  In a facial attack, the challenger asserts that the allegations in a complaint are insufficient on their face to invoke federal jurisdiction.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.  *Id.*  In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into one for summary judgment.  *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242).  For example, courts can consider declarations and exhibits "to the extent they provide jurisdictional evidence in support" of a defendant's Rule 12(b)(1) motion. *Hall v. BNSF Ry. Co.*, No. C13–2160 RSM, 2014 WL 4719007, at *2 n.2 (W.D. Wash. Sept. 22, 2014).   On a Rule 12(b)(1) motion, the court need not presume the truthfulness of the plaintiff's allegations.  *White*, 227 F.3d at 1242.  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."  *Savage*, 343 F.3d at 1039 n.2.

In the TCPA context, and specifically for TCPA internal do-not-call claims, the Eleventh Circuit (the only circuit to have considered this issue so far) has held that a plaintiff lacks standing to sue for an internal do-not-call TCPA violation unless that plaintiff first asked to be added to the defendant's internal do-not-call list.  *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1272 (11th Cir. 2019).  That's because there is "no

remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by [plaintiffs] who <u>never</u> said to [the defendant that] they didn't want to be called again.  These plaintiffs therefore would lack Article III standing to sue." *Id.* (emphasis in original).

### B.     Rule 12(b)(6).

Courts must dismiss a complaint under Rule 12(b)(6) that "fails to allege sufficient facts to support a cognizable legal theory." *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013) (citation omitted).   "To survive a motion to dismiss, a complaint must contain sufficient factual matter ... to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   Rule 8 requires plaintiffs to allege enough facts to "raise a right to relief above a speculative level," and a mere "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 at 555; *accord Whitaker v. Tesla Motors Inc.*, 985 F.3d 1173, 1176 (9th Cir. 2021).   Courts should not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *as amended*, 275 F.3d 1187 (9th Cir. 2001).   The Court should disregard allegations that are legal conclusions, even when disguised as facts.   *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."); *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).   "Although 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof is improbable,' plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'" *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 556–57) (internal citations omitted).   And where the facts pleaded in a complaint show that there are two alternative explanations, only one of which potentially would result in

liability, "plaintiffs cannot offer allegations that are merely consistent with their favored explanation but are also consistent with the alternative explanation. Something more is needed, such as facts tending to exclude the possibility that the alternative explanation is true, in order to render plaintiffs' allegations plausible." *Eclectic Props.*, 751 F.3d at 997; *see also Armstrong v. Investor's Bus. Daily, Inc*., No. CV 18-2134, 2018 WL 6787049, at *4 (C.D. Cal. Dec. 21, 2018) (dismissing putative class TCPA autodialed text-message claim).

## IV.   ARGUMENT

### A.   NCFC's Jurisdictional Evidence Confirms Stewart Lacks Standing to Pursue an Internal Do-Not-Call Claim.

#### 1.   Standing to Assert an Internal Do-Not-Call Claim.

Section 64.1200(d)(1) of the TCPA requires those who make telemarketing calls to maintain an internal list of subscribers who ask not to be called:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons ***who request not to receive telemarketing calls made by or on behalf of that person or entity***.

47 C.F.R. § 64.1200(d) (emphasis added).   The FCC's implementing regulations require that those who make telemarketing calls (1) have a written policy for maintaining an internal do-not-call list; (2) train their personnel on its "existence and use" of the list; (3) put called parties on the internal do-not-call list when they ask; and (4) refrain from calling individuals on that internal list for five years after a request is made. *See id*. § 64.1200(d)(1)–(6).

To have standing to bring an internal do-not-call claim, a plaintiff must, as a first step, *ask* to be placed on the defendant's internal do-not-call list.   47 C.F.R. § 64.1200(d).   If he has not, then that plaintiff lacks standing to assert, for example, that a defendant failed to maintain an internal do-not-call list in the first place.   The Eleventh Circuit recently reached this precise conclusion in *Cordoba v. DIRECTV,*

7

*LLC*, 942 F.3d 1259 (11th Cir. 2019), reasoning that "there's no remotely plausible causal chain linking the failure to maintain an internal do-not-call list to the phone calls received by [individuals] who never said to [the telemarketer] they didn't want to be called again." *Id*. at 1272.  Thus, if an individual never made that request, "it doesn't make any difference that [the telemarketer] hadn't maintained an internal do-not-call list.  [The telemarketer] could and would have continued to call them even if it had meticulously followed the TCPA and the FCC regulations." *Id*. at 1271.  For those individuals, "their injury wouldn't be fairly traceable to the challenged action of the defendant" and they "therefore would lack Article III standing to sue." *Id*. 1271–72.  Accordingly, asking to be placed on a company's internal do-not-call list is a "regulatory prerequisite" to establish standing for internal do-not-call claims. *Drake v. FirstKey Homes, LLC*, 439 F. Supp. 3d 1313, 1325 (N.D. Ga. 2020).

Similarly, in *Perrong v. South Bay Energy Corp.*, No. 2:20-cv-05781, 2021 WL 1387506, at *2 (E.D. Pa. Apr. 13, 2021), the court denied plaintiff's motion to amend his complaint to add an internal do-not-call claim, finding that he lacked standing because he "never asked to be on such a list, so its non-existence did not cause his injury." *Id.* at *3; *see also Bailey v. Domino's Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) (dismissing claim for violating § 64.1200(d) where "the Complaint simply recites the requirements of 47 C.F.R. § 64.1200(d) and conclusorily alleges they were violated"); *Sterling v. Securus Techs., Inc.*, No. 3:18-cv-1310, 2020 WL 2198095, at *5 (D. Conn. May 6, 2020) (allegations that "Defendant did not have in place procedures for the maintenance of an internal do-not-call list for telemarketing purpose[s] in violation of 47 U.S.C. § 227(c)" could not survive motion to dismiss).

### 2.   Stewart Lacks Standing to Pursue an Internal Do-Not-Call Claim Against NCFC.

NCFC's jurisdictional evidence confirms that Stewart lacks standing to maintain an internal do-not-call claim because he never asked to be placed on NCFC's

internal do-not-call list.  NCFC called to Stewart's -0395 number after purchasing an opt-in lead from a third party, but as the evidence shows, Stewart <u>never</u> asked NCFC to stop calling him or to place his number on NCFC's internal do-not-call list. Zuppiger Decl., ¶¶ 7–12 & Exs. A–G.  "Absent evidence of a legally sufficient request not to be called, there can be no inference drawn concerning [NCFC's] policies and procedures from its repeated calls to [Stewart]."  *Mattson v. Quicken Loans Inc*., No. 3:18-cv-00989, 2019 WL 7630856, at *8 (D. Or. Nov. 7, 2019).  "Section 64.1200 is not ambiguous.  The language 'not to receive telemarking calls made by or on behalf of that person or entity' refers back to the 'person or entity' that 'initiate[s]' a call. Thus, the provision applies to calls that a company might make to a list of people ***that have directed the company not to call them***."  *South Bay Energy Corp*., 2021 WL 1387506, at *2 (emphasis added).  Because the rest of NCFC's calls to Stewart were unanswered and NCFC received no internal do-not-call request on the inbound calls from Stewart's -0395 number, there was no instance in which Stewart could have asked (or did ask) to be placed on NCFC's internal do-not-call list.  *See* Zuppiger Decl., ¶¶ 9–12.  Thus, Stewart lacks standing to assert an internal do-not-call claim. *See*, *e.g.*, *Cordoba*, 942 F.3d at 1272; *Drake*, 439 F. Supp. 3d at 1325; *South Bay Energy Corp*., 2021 WL 1387506, at *2.  The Court should dismiss that claim.

**B.     Stewart's FAC Still Pleads No Facts to Support His ATDS Claim.**

The Court should also dismiss Plaintiff's ATDS claim because, even after his amendment, Stewart still includes no factual allegations to support it.  He still simply recites the statutory definition of an ATDS.  *Compare* FAC ¶ 9, ECF No. 14 (alleging NCFC "used an 'automatic telephone dialing system' as defined in 47 U.S.C. § 227(a)(1) to place its call to Plaintiff seeking to solicit its services") *with* 47 U.S.C. § 227(a)(1) (defining "automatic telephone dialing system" as "equipment which has the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers").  Stewart's amended

complaint is the kind of barebones formulaic statutory recitation *Iqbal* and *Twombly* proscribe.  Stewart cannot rely on conclusory allegations to unlock the doors to expensive and time-consuming discovery, and, because that is all his amended complaint offers on the ATDS claim, the Court should dismiss that claim.  *See Twombly*, 550 U.S. at 570; *Sprewell*, 266 F.3d at 988; *Iqbal*, 556 U.S. at 678.

In *Facebook*, the Supreme Court unanimously rejected the Ninth's Circuit's previous interpretation of the TCPA's ATDS definition in *Marks v. Crunch San Diego, LLC*, 904 F.3d 1041 (9th Cir. 2018), which held that dialing equipment that could store numbers and dial from a preset list (*i.e.*, predictive dialers) qualified as ATDSs.  In reversing *Marks*, the Supreme Court narrowed the TCPA's ATDS definition, holding that dialing equipment must have "the capacity either to store a telephone number ***using a random or sequential generator*** or to produce a telephone number ***using a random or sequential number generator***" to qualify as an ATDS. 141 S. Ct. at 1170 (emphasis added).  On top of holding that the TCPA's syntax required this definition, the Supreme Court specifically noted that this limited definition fit the TCPA's targeting of "a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." *Id*. at 1171.  Because "Congress expressly found that the use of random or sequential number generator technology caused unique problems for business, emergency, and cellular lines . . . the autodialer definition Congress employed includes only devices that use such technology, and the autodialer prohibitions target calls made to such lines." *Id*. at 1172.  And Congress' broad concerns for consumer privacy "[did] not mean that it adopted a broad autodialer definition." *Id*. at 1172.

The District of Colorado's decision in *Montanez*—the only case to examine the sufficiency of ATDS allegations on a motion to dismiss post-*Facebook*—is instructive.  There, the court noted that the plaintiff made specific factual allegations

about the messaging platform at issue (the case involved receipt of text messages), including allegations that the platform (1) permitted the defendant to transmit thousands of text messages automatically without human involvement; (2) had the capacity to store telephone numbers; (3) had the capacity to generate sequential numbers; (4) had the capacity to dial numbers in sequential order; (5) had the capacity to dial numbers from a list of numbers; (6) had the capacity to dial numbers without human intervention; and (7) had the capacity to schedule a time and date for future transmission of text messages without human involvement. *Montanez v. Future Vision Brain Bank*, No. 20-cv-02959, Compl. ¶¶ 36–40, ECF No. 1, (D. Colo. filed Oct. 1, 2020); *Montanez*, 2021 WL 1291182, at *6 (as alleged defendant "relied on the Platform's ability to store telephone numbers, generate sequential numbers, dial number in sequential order, and dial numbers without human intervention"); *see also McEwen v. Nat'l Rifle Ass'n*, No. 2:20-cv-00153-LEW, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021) (noting in dicta that "[a]fter the *Duguid* opinion, the ATDS portion of the claim requires an allegation that [the calling party] used a random or sequential number generator to place a call to Plaintiff's cell phone, not merely a claim that its dialing system has that capability."). The *Montanez* court also noted that the plaintiff alleged other indicia of ATDS use, such as the impersonal nature of the text messages and receipt of at least seven messages over a short period, which suggested they could have been sent randomly or sequentially by a machine, as opposed to in a targeted manner by a live agent. *Montanez*, 2021 WL 1291182, at *6. Cumulatively, the court found these allegations, taken as a whole, were enough to state an ATDS claim, especially because "as is necessary after *Facebook*, Plaintiff alleged that Defendant's Platform generated the numbers in sequential order." *Id*. at *7.

Stewart's ATDS allegations stand in stark contrast to those in *Montanez*. Stewart's sole ATDS allegation is limited to this: **NCFC's dialing equipment is an**

**ATDS "as defined in 47 U.S.C. § 227(a)(1)."**  *See* FAC ¶ 9, ECF No. 14 (emphasis added).  That purely speculative allegation merely appends the statutory definition of an ATDS to NCFC's dialing equipment, with no underlying plausible factual basis. It is the kind of naked assertion, devoid of any factual support, that *Iqbal* and *Twombly* hold does not meet the threshold pleading standard.  *See Iqbal*, 556 U.S. at 678.  Indeed, were more not required to satisfy the pleading standard for an ATDS claim, then any person could sue over just about any phone call made from virtually any modern cell phone, subjecting "ordinary cell phone owners" to lawsuits that, buttressed only by conclusory allegations, would nevertheless automatically make it past the pleading stage by simply pasting the ATDS's definition into the complaint. The unanimous Supreme Court disavowed that result in *Facebook*, where it upheld the district court's dismissal of the plaintiff's ATDS claim on a Rule 12(b)(6) motion (a dismissal the Ninth Circuit had reversed).  *See* 141 S. Ct. at 1171, 1173.  And unlike the *Montanez* plaintiff's complaint, there are no allegations about the dialing equipment's specific capabilities, including "as is necessary after *Facebook*," whether the equipment employs random or sequential number generation.  *Montanez*, 2021 WL 1291182, at *6; *McEwen*, 2021 WL 1414273, at *7.

Even pre-*Facebook*, Stewart's ATDS claims do not pass muster because he does not plead any facts about the calls themselves—preventing the Court from drawing, at the pleadings stage, a reasonable inference that the calls were made with technology that is regulated by the TCPA.  *See Maier v. J.C. Penny Corp., Inc*., No. 13-cv-0163, 2013 WL 3006415, at *3 (S.D. Cal. June 13, 2013) (providing pre-*Facebook* examples of what a plaintiff must plead for an ATDS claim, including "generic content of a message, a description of a robotic sounding voice, or a lack of human response," which constitute "indirect factual allegations supporting a reasonable inference of use of an ATDS"); *Nakai v. Charter Commc'ns, Inc*., No. CV 19-8035, 2020 WL 1908948, at *5–6 (C.D. Cal. Apr. 15, 2020) (dismissing TCPA

claim even pre-*Facebook* where plaintiff simply regurgitated definition of ATDS, rather than pleading specific facts suggesting ATDS was used); *Makaron v. GE Sec. Mfg., Inc.*, No. CV-14-1274, 2014 WL 12614468, at *2 (C.D. Cal. July 31, 2014) (similar); *Priester v. eDegreeAdvisor, LLC*, No. 5:15-cv-04218, 2017 WL 4237008, at *2 (S.D. Cal. Sept. 25, 2017) (dismissing TCPA claim even pre-*Facebook* and rejecting contention that plaintiff's pleading obligation "is satisfied by generically alleging the use of an ATDS by a defendant, in a manner that simply parrots the statutory language").

Thus, Stewart has not stated any ATDS claim, and the Court should therefore dismiss those claims under Rule 12(b)(6).

## V. CONCLUSION

NCFC's jurisdictional evidence conclusively establishes that Stewart lacks standing to pursue his TCPA internal do-not-call claim because Stewart never asked that NCFC place his -0395 number on the company's internal do-not-call list. Stewart therefore lacks standing to bring an internal do-not-call claim, mandating dismissal of that claim under Rule 12(b)(1). As for his ATDS claim, Stewart pleads no facts that could plausibly support a reasonable inference that NCFC used an ATDS—especially as *Facebook* now defines it—to make the alleged calls. He has thus failed to state any ATDS claim, and the Court should dismiss that claim as well under Rule 12(b)(6).

Dated: May 26, 2021                    KABAT CHAPMAN & OZMER LLP

                                       /s/ Benjamin D. Williams
                                       Benjamin D. Williams

                                       *Attorney for Defendant Network Capital Funding Corporation*

## **PROOF OF SERVICE**

### **UNITED STATES DISTRICT COURT**
### **CENTRAL DISTRICT OF CALIFORNIA**

I am employed in Los Angeles, California; I am over the age of 18 and not a party to the within action; my business address is 333 S. Grand Avenue, Suite 2225, Los Angeles, CA 90071.

On May 26, 2021, I served the foregoing document(s) described as **DEFENDANT NETWORK CAPITAL FUNDING CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FAC; MEMORANDUM OF POINTS AND AUTHORITIES (inclusive of proposed order)** on the interested parties to this action by delivering a copy thereof in a sealed envelope addressed to each of said interested parties at the following address(es): SEE ATTACHED LIST

☒ **(BY EMAIL SERVICE)** I caused such document to be delivered electronically via e-mail to the e-mail address of the addressee(s) set forth in the attached service list.

☒ **(BY ELECTRONIC SERVICE)** by causing the foregoing document(s) to be electronically filed using the Court's Electronic Filing System which constitutes service of the filed document(s) on the individual(s) listed on the attached mailing list.

☒ (Federal) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made. I declare under penalty of perjury that the above is true and correct.

Executed on May 26, 2021, at Los Angeles, CA.

By: /s/ Paul A. Grammatico

_____
Paul A. Grammatico

## SERVICE LIST

**Adrian Robert Bacon**
Law Offices of Todd M Friedman PC
21550 Oxnard Street Suite 780
Woodland Hills, CA 91367
323-306-4234
Fax: 866-633-0228
Email: abacon@toddflaw.com

**Meghan Elisabeth George**
Law Offices of Todd M Friedman PC
21550 Oxnard Street Suite 780
Woodland Hills, CA 91367
323-306-4234
Fax: 866-633-0228
Email: mgeorge@toddflaw.com

**Thomas Edward Wheeler**
Law Offices of Todd Friedman PC
21550 Oxnard Street Suite 780
Woodland Hills, CA 91367
323-306-4234
Fax: 866-633-0228
Email: twheeler@toddflaw.com

**Todd M Friedman**
Law Office of Todd M Friedman PC
21550 Oxnard Street Suite 780
Woodland Hills, CA 91367
323-306-4234
Fax: 866-633-0228
Email: tfriedman@toddflaw.com